UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BOARD OF TRUSTEES OF THE BAY
AREA ROOFERS HEALTH & WELFARE
TRUST FUND, et al.,

               Plaintiffs,

     v.

WESTECH ROOFING,

               Defendant.

Case No.  12-cv-05655-JCS

**ORDER GRANTING AMENDED
MOTION FOR DEFAULT**

Re: Dkt. No. 41

## I.  INTRODUCTION

This action was filed on November 2, 2012.  On November 24, 2012, the Complaint and summons were personally served on Laurin Hunt, the agent who is designated by law to accept service of process on behalf of Westech Roofing.  See Docket No. 12. Defendant did not answer or appear and on May 1, 2013, the Clerk entered default against Defendant.  On January 6, 2014, the Court denied Defendant's request that the Court vacate the default.  Currently before the Court is Plaintiff's Amended Motion for Default Judgment Against Defendant Westech Roofing ("Motion").   A hearing on the Motion was held on March 21, 2014.  At the request of the Court, Plaintiffs submitted supplemental materials on April 18, 2014.  Defendant filed a response on April 28, 2014 and Plaintiffs filed a reply on May 5, 2014.  For the reasons stated below, the Motion is GRANTED.[1]

## II.  BACKGROUND

Plaintiffs are the trustees of the Bay Area Roofers Health & Welfare Trust Fund, Pacific Coast Roofers Pension Plan, East Bay/North Bay Roofers Vacation Trust Fund, Bay Area

---

[1] The parties have consented to the jurisdiction of the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

Counties Roofing Industry Promotion Fund, and Bay Area Counties Roofing Industry Apprenticeship Training Fund.  Complaint at 2.  Plaintiffs allege that the trust funds are employee benefit plans within the meaning of §§ 3(1) and (3), as well as § 502(d)(1) of ERISA, 29 U.S.C. §§ 1002(1)[2] and (3),[3] and § 1132(d)(1).[4]  *Id.*[5]

Defendant Westech Roofing ("Westech"), a California corporation, entered into a written collective bargaining agreement with Local Union 81 of the United Union of Roofers, Waterproofers and Allied Worker, AFL-CIO.  Complaint at 3; Declaration of Sandy Stephenson in Support of Motion for Default Judgment Against Defendant Westech Roofing [Docket No. 19-1]

---

[2] Section 1002(1) defines "employee welfare benefit plan" and "welfare plan" as follows:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

[3] Section 1002(3) defines an "employee benefit plan" or "plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan."  The term "employee pension benefit plan" is defined in § 1002(2) and includes a plan, fund or program that either: 1) "provides retirement income to employees," or 2) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond."  29 U.S.C. § 1002(2).
[4] Section 1132(d)(1) allows an employee benefit plan to bring a legal action to enforce the terms of the plan.
[5] In their supplemental brief, Plaintiffs concede that the Bay Area Counties Roofing Industry Promotion Fund is not a covered employee benefit plan under ERISA.  Plaintiffs' Supplemental Briefing in Support of Motion for Default Judgment ("April 18, 2014 Supplemental Brief") at 9; *see also Daniels-Hall v. National Education Ass'n*, 629 F3d 992 (9th Cir. 2010)(holding that a program that was alleged to be an employee benefit plan was not covered under ERISA because the program merely *promoted* various retirement plans but did not itself provide any employee benefits); *UA Local No. 467 Pension Trust Fund v. Hydra Ventures Inc.*, 2013 WL 1007311 (N.D. Cal. March 13, 2013) (finding based on *Daniels-Hall* that some trust funds listed in a collective bargaining agreement were not employee benefit plans within the meaning of ERISA).  Hereinafter, the Court uses the term "Trust Funds" to refer to all of the trusts named as plaintiffs in this action *except* the Bay Area Counties Roofing Industry Promotion Fund.  Similarly, the term "Trust Agreements" refers only to the agreements of the ERISA trust funds in this action.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  ("July 12, 2013 Stephenson Decl.") ¶ 2 & Ex. A (Individual Employer Agreement); *id.*, Ex. 2

2  (Working Agreement) ("Collective Bargaining Agreement" or "CBA").  The CBA incorporates

3  the trust agreements of the Trust Funds and requires employers to make fringe benefit

4  contributions to the Trust Funds on a regular basis for work performed by covered employees.  *Id.*,

5  Ex. B, Articles XVIII - XXI.

6         Under the Trust Agreements, employers are required to submit a monthly report to the

7  Trust Funds identifying the covered employees who worked for the employer that month as well

8  as the fringe benefit contributions due for each covered employee.  *See* Declaration of Sandy

9  Stephenson in Support of Plaintiffs' Supplemental Briefing ("April 18, 2014 Stephenson Decl."),

10 Ex. HH (Trust Agreement of the Roofer's Local Union No. 81 Area Health and Welfare Trust

11 Fund ("Health and Welfare Trust Agreement")), Section III;  *id.*, Ex. II (Pacific Coast Roofers

12 Pension Trust Agreement), Section III;  *id.*, Ex. JJ (Trust Agreement of the East Bay/North Bay

13 Roofers Vacation Trust Fund, Section III;  *id.*, Ex. KK (Amended Agreement and Declaration of

14 Trust Bay Area Counties Roofing Industry Apprenticeship Training Fund),  Section III.   The

15 Trust Agreements provide for liquidated damages in the event contributions are delinquent; where

16 legal action has been commenced to collect delinquent contributions the amount of liquidated

17 damages is 20% of the late contribution.  *Id.*, Ex. HH (Health and Welfare Trust Agreement),

18 Section III(C)(2);  *id.*, Ex. II (Pacific Coast Roofers Pension Trust Agreement), Section

19 III(C)(2)(b)(i);  *id.*, Ex. JJ (Trust Agreement of the East Bay/North Bay Roofers Vacation Trust

20 Fund), Section III(C)(2);  *id.*, Ex. KK (Amended Agreement and Declaration of Trust Bay Area

21 Counties Roofing Industry Apprenticeship Training Fund),  Section III(B) (incorporating

22 liquidated damages policies and procedures of Health and Welfare Trust).  The Trust Agreements

23 also provide for interest on unpaid contributions (but not on liquidated damages) at a rate of 10%.

24 *Id.*, Ex. HH (Health and Welfare Trust Agreement), Section III(C)(3);  *id.*, Ex. II (Pacific Coast

25 Roofers Pension Trust Agreement), Section III(C)(3);  *id.*, Ex. JJ (Trust Agreement of the East

26 Bay/North Bay Roofers Vacation Trust Fund), Section III(C)(3);  *id.*, Ex. KK (Amended

27 Agreement and Declaration of Trust Bay Area Counties Roofing Industry Apprenticeship Training

28 Fund), Section III(B) (incorporating interest  policies and procedures of Health and Welfare

1   Trust).

2           Under the Trust Agreements, the trustees are given the authority to enact rules and

3   regulations governing the collection of delinquent contributions.  *Id*., Ex. HH (Health and Welfare

4   Trust Agreement), Section III(H);  *id*., Ex. II (Pacific Coast Roofers Pension Trust Agreement),

5   Section III(H);  *id*., Ex. JJ (Trust Agreement of the East Bay/North Bay Roofers Vacation Trust

6   Fund), Section III(H);  *id*., Ex. KK (Amended Agreement and Declaration of Trust Bay Area

7   Counties Roofing Industry Apprenticeship Training Fund), Section III(B) (incorporating

8   regulations of Health and Welfare Trust but reserving right of trustees to revoke that delegation of

9   authority).  However, employer liability is limited to the liabilities that are expressly set forth or

10  authorized in the Trust Agreements, the CBA or the employers' individual contribution

11  agreements.  *Id*., Ex. HH (Health and Welfare Trust Agreement), Section III(I);  *id*., Ex. II (Pacific

12  Coast Roofers Pension Trust Agreement), Section III(I);  *id*., Ex. JJ (Trust Agreement of the East

13  Bay/North Bay Roofers Vacation Trust Fund), Section III(I);  *id*., Ex. KK (Amended Agreement

14  and Declaration of Trust Bay Area Counties Roofing Industry Apprenticeship Training Fund),

15  Section II(C).

16          The rules and regulations for collecting employer contributions are set forth in a document

17  entitled  "Bay Area Roofers Trust Funds:  Collection Policies" (hereinafter, "Collection Policies"),

18  which went into effect in June 2013.  July 12, 2013 Stephenson Decl., Ex. D.[6]  The Collection

19  Policies provide that contributions for a particular month are delinquent if they are not paid by the

20  last day of the subsequent month.  *Id*.  The Collection Policies, like the underlying Trust

21  Agreements, provide for 20% liquidated damages where delinquent contributions have been

22  referred to an attorney for collection.  *Id*.  The Collection Policies also provide for interest at a rate

23  of 10% per annum, but in contrast to the Trust Agreements, the Collection Policies provide that

24  interest will be imposed on not only delinquent contributions but also the associated liquidated

25  damages for those contributions.  *Id*.

26  _____

27  [6] This document states that these collection procedures were enacted "[p]ursuant to the delegation
    of authority by each related Trust and entity to the Bay Area Roofers Health and Welfare Trust."

28  Neither the document nor the accompanying declaration offers any definition of the term "related
    Trust."

United States District Court
Northern District of California

In the Complaint, Plaintiffs alleged that Westech failed to make required payments to the Trust Funds and that there were contributions due and owing for the months of June through September 2012.  Complaint at 3.  The Complaint sought to recover these contributions, as well as any additional contributions that might become due and owing during the course of this litigation, under ERISA, 29 U.S.C. § 1132.  *Id*. at 3-4.  Plaintiffs also sought an award of liquidated damages, interest, attorneys' fees and costs.  *Id*. at 4-5.  Finally, the Complaint asked the Court to "enjoin the defendant from violating the terms of the collective bargaining agreement and the Trust Agreements for the full period for which defendant is contractually bound to file reports and pay contributions to the [Trust Funds]."  *Id*. at 5.

After default was entered against Westech, on May 1, 2013, Plaintiffs filed a motion for default judgment.  *See* Docket No. 19.  As Westech continued to make payments on the delinquent contributions, rendering Plaintiffs' damages calculations moot, the Court denied Plaintiffs' motion without prejudice to refiling with updated damages calculations and supporting evidence.  *See* Docket No. 33.  In the meantime, the Court denied a motion by Westech to set aside the default, finding that Westech was properly served and that its failure to appear in this action was culpable.  *See* Docket No.  40.

On January 23, 2014, Plaintiffs filed an amended motion for default judgment (the instant motion).   During the course of briefing (both the normal prehearing briefing and the round of supplemental briefing that followed the motion hearing), the amounts sought by Plaintiffs have been revised several times.   First, while the initial motion requested damages covering the period of June 2012 through November 2013, in Plaintiffs' most recent brief, filed on May 5, 2014, Plaintiffs request damages for the period of June 2012 through March 2014.[7]  *See* Plaintiffs'

---

[7] At the Motion hearing, the Court asked Plaintiffs to file supplemental materials and set a deadline for Defendant to respond to those materials.  The Court did not expressly permit Plaintiffs to file a reply to Westech's response and Plaintiffs did not request leave to do so.  Nonetheless, Plaintiffs filed a reply brief on May 5, 2014.  To the extent this supplemental brief responds directly to arguments raised in Westech's  April 28, 2014 response, the Court will consider Plaintiffs' May 5 materials.  The Court will not, however, address Plaintiffs' request for delinquent contributions, liquidated damages and interest for the month of March 2014.  Westech has not had an opportunity to respond to Plaintiffs' request as to that month and the Court will not initiate yet another round of briefing before deciding Plaintiffs' Motion.  The Court, therefore, addresses Plaintiffs' request for delinquent contributions and associated damages only through

1   Supplemental Reply Brief in Support of Motion for Default Judgment ("May 5, 2014 Reply

2   Brief").  Second, Plaintiffs revised their calculations following the motion hearing to exclude the

3   contributions owed to the Bay Area Counties Roofing Industry Promotion Fund, which Plaintiffs

4   have conceded is not covered by ERISA.  *See* April 18, 2014 Supplemental Brief at 9.  Third,

5   Plaintiffs have requested additional attorneys' fees to cover the time spent preparing the post-

6   hearing supplemental materials.   Supplemental Declaration of Eileen M. Bissen in Support of

7   Motion for Default Judgment Against Westech Roofing ("April 18, 2014 Bissen Decl.") ¶ 2.

8   Fourth, in their most recent brief, Plaintiffs have recalculated the interest amounts for the months

9   prior to the adoption of the Collection Policies, in June 2013, requesting interest only on

10  contributions and not on liquidated damages for those months.  May 5, 2014 Reply Brief at 9.

11  The Court addresses the specific amounts sought by Plaintiffs as to the various types of damages –

12  as well as Westech's objections to those amounts – in its analysis below.

13  **III.    ANALYSIS**

14       **A.    Entry of Default Judgment**

15       Plaintiffs have applied for a default judgment in this action on the basis that Defendant has

16  failed to plead or otherwise defend or appear after valid service.  Under Federal Rule of Civil

17  Procedure 55(b)(2), the court may enter a default judgment once the Clerk, under Rule 55(a), has

18  entered the party's default based upon a failure to plead or otherwise defend the action.  Fed. R.

19  Civ. P. 55(b)(2).  "A default judgment may be entered against an infant or incompetent person

20  only if represented by a general guardian, committee, conservator, or other like fiduciary who has

21  appeared."  If the court is satisfied that jurisdiction is proper and that service of process upon the

22  defendant was adequate, courts are instructed to consider several facts in determining whether to

23  grant default judgment:

24           (1) the possibility of prejudice to the plaintiff, (2) the merits of
             plaintiff's substantive claim, (3) the sufficiency of the complaint,
25           (4) the sum of money at stake in the action, (5) the possibility of a
             dispute concerning material facts, (6) whether the default was due
26           to excusable neglect, and (7) the strong policy underlying the

27

28  February 2014, which is the last month as to which Westech had an opportunity to respond to
    Plaintiffs' damages request.

Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  In making its decision, the court takes all factual allegations in the complaint, except those relating to damages, as true.  *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).  Where a court finds that default should be granted, it may award damages if the plaintiff satisfies its burden of proving the damages through evidence.  *See id*.

Westech is not exempt from default judgment on the basis that it is an infant, incompetent, soldier or sailor.  The Court further finds that Plaintiffs' claims are well-pleaded.   Plaintiffs have offered evidence that Westech entered into a collective bargaining agreement requiring it to make timely fringe benefit contributions to the Trust Funds and that Westech has failed to comply with this obligation.  Consequently, Plaintiffs state a claim under ERISA, 29 U.S.C. § 1145.[8]  Further, the Court finds no evidence of excusable neglect that would justify denying Plaintiffs' request for default judgment.   To the contrary, the Court has found that Westech's failure to respond was culpable conduct.  Therefore, entry of default judgment against Westech in this action is appropriate.

## B.      Remedy

### 1.  Section 1132(g)

Once liability is established through a defendant's default, a plaintiff is required to establish that the requested relief is appropriate.  *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).  Under ERISA, an employee benefit plan that obtains judgment in its favor in an action for unpaid contributions under 29

---

[8] Section 1145 provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 145.

United States District Court
Northern District of California

U.S.C. § 1145 is entitled to the following forms or relief:

    (A) the unpaid contributions,

    (B) interest on the unpaid contributions,

    (C) an amount equal to the greater of –

        (1) interest on the unpaid contributions, or

        (2) liquidated damages provided for under the plan in an amount not in excess of 20

        percent . . . of the amount determined by the court under subparagraph (A),

    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

    (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).  This section further provides that "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.  *Id.*

### 2. *Idaho Plumbers* and Remedies Available for Contributions That Have Been Paid but Paid Late

In *Idaho Plumbers & Pipefitters Health and Welfare Fund v. United Mech. Contractors, Inc.*, the Ninth Circuit addressed  whether a trust fund could seek liquidated damages under ERISA, 29 U.S.C. § 1132(g)(2), based on the late payment of employer contributions where no contributions remained unpaid when the action was initiated.  875 F.2d 212, 214-215 (9th Cir. 1989).  The court found that it could not, holding that ERISA's liquidated damages provision applies only "when (1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of suit, and (3) the plan provides for liquidated damages."  *Id.*  The court went on to hold, however, that ERISA does not preempt alternative contractual remedies in situations where § 1132(g)(2) does not apply.  *Id.* at 217 (legislative history "indicates that Congress intended only to preempt laws limiting liquidated damages to an amount below the 20% level when the terms of § 1132(g)(2) are satisfied").  Thus, where a trust agreement provides for liquidated damages but ERISA does not apply, court must apply federal common law to determine whether the provision is enforceable.  *Id.* at 217-218.  Under federal common law, a liquidated damages provision is enforceable so long as 1) "the harm caused by a breach [is] very difficult or

impossible to estimate"; and 2) "the amount fixed [is] a reasonable forecast of just compensation for the harm caused." *Id*. In *Idaho Plumbers*, the court concluded that the 20% liquidated damages provision in the trust agreement (which gave rise to liquidated damages of over $9,000 for a contribution that was paid only four days late) constituted a penalty rather than a reasonable forecast of just compensation for the harm caused and therefore was unenforceable. *Id*. at 218.

There have been disagreements among the district courts on certain questions relating to the application of *Idaho Plumbers*.  First, courts in this district have disagreed as to whether *Idaho Plumbers* allows for the award of liquidated damages on late contributions that were paid *before* an action was filed so long as there were unpaid contributions for *other* months at the time the suit was initiated.  *See Trustees of Bricklayers Local No. 3 Pension Trust v. Huddleston*,  2013 WL 2181532, at *5 (N.D.Cal., 2013) (discussing split of authority).  The undersigned agrees with the conclusion of Judge Corley, in *Huddleston*, that the approach that is most consistent with the language of § 1132(g) and the reasoning of *Idaho Plumbers* is the one that has found that liquidated damages on contributions paid *before* the action is initiated are not available under ERISA even if other months were unpaid at the time the action was filed.  *See id*.  By the same logic, the undersigned finds that if a portion of the contributions due for a particular month are paid before an action is initiated, the trust fund may not recover liquidated damages and interest under ERISA on those paid contributions (though liquidated damages and interest may be available on the paid contributions under federal common law).  Rather, the amount of liquidated damages and interest due under ERISA should be calculated based upon the amount of contributions for a particular month that remained unpaid when the action was filed.

Another disagreement relates to contributions that came due *after* the action was filed.  At least one court in this district has held that under *Idaho Plumbers*, liquidated damages are not available under ERISA for contributions that become delinquent after suit is filed, even if they remain unpaid at the time a judgment is entered.  *See Board of Trustees v. Udovch*, 771 F.Supp. 1044, 1053 (N.D.Cal.1991).  On the other hand, in *Roofers Local Union No. 81 v. Wedge Roofing, Inc*., 811 F.Supp. 1398 ( N.D.Cal. 1992), the "court awarded liquidated damages for contributions that became delinquent after suit was filed and remained unpaid, reasoning that to

9

United States District Court
Northern District of California

deny them would be to force trust funds to file successive lawsuits for each new delinquent

contribution and would frustrate ERISA's goals of deterring violations and compensating funds for

such violations." *Board of Trustees v. B.D. Bridon, Inc.*, 1995 WL 573701, at *3 (N.D. Cal. Sept.

19, 1995) (citing *Wedge Roofing*, 811 F. Supp. at 1401-1402). The undersigned finds the

reasoning of *Wedge Roofing* to be persuasive. Therefore, the Court concludes that contributions

that come due after an action is filed may give rise to an award of liquidated damages and interest

under ERISA, both where the contributions remain unpaid when judgment is entered and where

they have already been paid by the time judgment is entered.

### 3.   Unpaid Contributions, Liquidated Damages and Interest

#### a.   Collection Policies and Practices

In order to determine the amount to which Plaintiffs are entitled, the Court must first

address whether the collection policies and practices used by Plaintiffs to determine when a

particular contribution has been paid and to calculate liquidated damages and interest are

consistent with the terms of the Trust Agreements and ERISA. In particular, the Court addresses

the following three policies and practices:  1) the practice of applying all payments from Westech

to the *oldest* outstanding contribution first; 2) the practice of waiting to process any payments for a

particular month (or positive account balances) until the full amount for that month has been

received, *see* Declaration of Sandy Stephenson in Support of Reply to Defendant Westech

Roofing's Opposition to the Amounts Stated in the Board of Trustees et al. Motion for Default

Judgment ("March 4, 2014 Stephenson Decl.") ¶ 12;[9] and 3) the practice of calculating  the

interest due based not only on unpaid and delinquent contributions but also on liquidated damages.

Under ERISA, the trustees of employee benefit plans have broad discretion as to their

accounting practices where the relevant trust agreement vests discretionary power in the trustees to

---

[9] At the Motion hearing, the Court told Plaintiffs that they would need to justify their practice of waiting to process payments until an entire month's contributions had been received and assessing liquidated damages and interest as if the entire amount due remained unpaid. Plaintiffs did not address this question in either of the two supplemental briefs they filed after the hearing. Further, all of their calculations of liquidated damages are based on the assumption that the entire amount of the contributions due for a particular month remain unpaid until the full amount for that month is received.

United States District Court
Northern District of California

1    construe and administer the terms of the trust. *Johnson v. Trustees of Western Conference of*

2    *Teamsters Pension Trust Fund*, 879 F.2d 651, 654 (9th Cir. 1989).  However, they may be found

3    to abuse their discretion in an enforcement action if their "application of plan provisions [is]

4    clearly in conflict with the plain language of the plan." *Hancock v. Montgomery Ward Long Term*

5    *Disability Trust*, 787 F.2d 1302, 1307 (9th Cir. 1986).   The Court does not find that Plaintiffs'

6    policy of attributing payments to the oldest outstanding contribution constitutes an abuse of

7    discretion as this practice is not clearly in conflict with the language of the Trust Agreements.  The

8    Court concludes that the Trust Funds abuse their discretion as to the other two policies, however.

9         First, in arbitrarily deciding to consider amounts that have, in fact, been paid as being

10   *unpaid* for the purposes of calculating liquidated damages and interest until the full months'

11   contribution has been received, Plaintiffs have adopted a policy that directly conflicts with the

12   language of the trust agreements.  The trust agreements provide for liquidated damages and

13   interest only on payments that are *actually* delinquent or unpaid.  Further, as discussed above,

14   employer liability is limited to the liabilities that are expressly set forth or authorized in the Trust

15   Agreements, the CBA or the employers' individual contribution agreements.  To the extent

16   Plaintiffs' practice imposes liability for making incomplete payments (by charging liquidated

17   damages and interest on amounts that have already been paid on the basis that the full amount for

18   the month has not been paid), it amounts to an additional liability beyond those that are set forth or

19   authorized in the Trust Agreements.  Thus, the practice is clearly in conflict with the Trust

20   Agreements.  The Court also notes that the statement in the March 4, 2014 Stephenson Declaration

21   that the administrator cannot process partial payments is contradicted by the express language of

22   the Health and Welfare Trust Agreement, which sets forth specific rules regarding the allocation

23   of partial payments.  See April 18, 2014 Stephenson Decl., Ex. GG (Health and Welfare Trust

24   Agreement) at ECF p. 21. [10]

25   _____

26   [10] In following this policy to calculate their liquidated damages, Plaintiffs have significantly
     inflated the amount of liquidated damages to which they are entitled.   As just one example,

27   Plaintiffs concede that Westech made a timely partial payment for its April 2013 ERISA
     contributions (in the amount of $5,181.30) but nonetheless calculated liquidated damages for April

28   2013 as if *none* of the contributions for that month had been paid timely.  *See* April 18, 2013
     Stephenson Decl., ¶¶ 63-64 & Ex. BB. Thus, for the month of April 2013, Plaintiffs requested

Second, while the Trust Agreements permit the trustees to adopt reasonable rules and regulations relating to the collection of delinquent contributions, the policy of collecting interest on liquidated damages – which is not authorized under any of the Trust Agreements – amounts to the imposition of an additional liability on employers beyond the liability authorized under the Trust Agreements.  Therefore, this policy, like the policy discussed above, is in direct conflict with the language of the Trust Agreements and constitutes an abuse of discretion by the Trust Funds.[11]

b.   Liquidated Damages and Interest Owed

The Court does not rely on Plaintiffs' calculation of contributions owed, liquidated damages and interest because those calculations are based on accounting policies and practices that the Court has rejected, as discussed above.  In addition, some of Plaintiffs' calculations appear to be incorrect.[12]  Finally, Plaintiffs have not taken into account the implications of *Idaho Plumbers*, discussed above, in calculating the amounts due.  Nonetheless, the materials provided by Plaintiffs are – just barely– sufficient to determine the amount of Westech's unpaid contributions, liquidated damages, and interest, as of the date of the final brief, on May 5, 2014.

In calculating these amounts, the Court has relied on the Stephenson declarations stating the contribution amounts due (both total contributions due and contributions due only to the plans covered by ERISA) and the "Payment and Processing" spreadsheets  (hereinafter, the "spreadsheets") supplied by Plaintiffs, which reflect the payments made by Westech and the running balance on its account.  *See* March 4, 2014 Stephenson Decl., Ex. Z; April 18, 2014

over a thousand dollars more in liquidated damages than the amount to which they are entitled.
[11] The Court notes that it does *not* hold here that the Trustees may not amend the Trust Agreements to permit the collection of interest on both unpaid contributions and liquidated damages.  That is not what occurred here, however. Rather, the Collection Policies were enacted "[p]ursuant to the delegation of authority" of the Trust Agreements" and thus, merely *implement* those agreements.  *See* July 12, 2013 Stephenson Decl., Ex. D.
[12] For example, according to the April 18, 2014 Stephenson Declaration, Westech owed $30,002.70 to the ERISA plans in January 2014 and $26,255.30 to the ERISA plans in February 2014.  April 18, 2014 Stephenson Decl., ¶¶ 82, 84.  Yet Stephenson states later in the same declaration that Westech owed $56,626.39 in delinquent contributions, that is, *more than the total amount* due to the ERISA plans for the months of January and February.  *Id.* ¶ 95.  It appears that Stephenson obtained this figure by adding together the *total* contributions due for January and February 2014 (including the contributions that were owed to the non-ERISA plan that Plaintiffs purportedly excluded from their calculations) and then subtracting out the balance of $1,209.53 that was left over after the December 2013 contributions were processed, around April 1, 2014.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Stephenson Decl., Ex. BB;  May 5, 2014 Stephenson Declaration, Ex. NN.  The Court notes that

2  although Westech initially asserted that Plaintiffs had failed to account for certain payments it had

3  made to the Trust Funds, following the supplemental brief submitted by Plaintiffs on April 18,

4  2014, which addressed each of the payments Plaintiffs had allegedly failed to account for,

5  Westech stipulated that the figures offered by Plaintiffs as to the amount of contributions it owed

6  were correct, implicitly conceding that Plaintiffs have accounted for all of Westech's payments.

7  *See* Westech Roofing Response to Board of Trustees Et Al. Supplemental Briefing in Support of

8  Motion for Default Judgment ("April 28, 2014 Westech Response") at 2.

9        The spreadsheets reflect payments made by Westech and the amounts that were processed

10  for each month; the latter amounts include contributions due both to the ERISA plans and the non-

11  ERISA plan.  Although Plaintiffs are not entitled to liquidated damages and interest on the non-

12  ERISA contributions, Westech does not dispute that it owed these non-ERISA contributions and

13  therefore the Court concludes that it may rely on the running balances supplied by Plaintiffs to

14  determine the amount of liquidated damages and interest available on the ERISA contributions.

15  To the extent that Plaintiffs have offered no evidence as to how they would have allocated partial

16  payments as between the ERISA plans and the one non-ERISA plan had they processed these

17  payments when they were received, the Court takes the approach most favorable to Westech; in

18  particular, the Court assumes that for any given month's contributions, those due to the ERISA

19  plans would be paid first.

20        As stated above, February 2014 is the last month considered by the Court in determining

21  the amount of unpaid contributions, liquidated damages and interest.  Westech  has not had an

22  opportunity to respond to Plaintiffs' request for subsequent delinquent or unpaid contributions and

23  the Court will not further delay ruling on Plaintiffs' Motion to permit still more briefing.

24        c.   Month-by-Month Calculation[13]

25

26  [13] Plaintiffs suggest that it is Westech's burden to offer the court "the correct calculations."  *See*
    May 5, 2014 Reply Brief at 2.  Plaintiffs are incorrect.  It is Plaintiffs' burden on default judgment

27  to establish the amount of their damages.  The Court has sifted through Plaintiffs' evidence to
    determine the proper amounts due because to deny Plaintiffs' request for damages would result in
    a windfall to Westech.  In light of Westech's long history of non-compliance, such a result would

28  be inconsistent with the purposes of ERISA.

13

### i.   June 2012

Westech owed $28,079.00 in fringe benefit contributions for the month of June 2012. April 18, 2014 Stephenson Decl., ¶ 43.  Of that amount, $27,331.75 was owed to employee benefit plans covered by ERISA.  *Id*.  On July 31, 2012, these contributions became delinquent.  *See id*. Although Westech made several payments to Plaintiffs on July 17, 2012, all were used to pay outstanding contributions for prior months, namely, February through April 2012.  *Id*., Ex. BB (stream of payments).  On August 9, 2012, however, Westech made a payment in the amount of $8,000.  *Id*.  At that point, Plaintiffs processed the May 2012 contribution payment, leaving a positive balance of $4,918.13 to be applied to the June 2012 contribution obligation.  Assuming all of this amount would have been applied to the ERISA plan contributions,  the remaining contributions due to the ERISA plans for June 2012 amounted to $22,413.62 as of August 9, 2012. *Id*.  The balance of the June 2012 contributions was paid in December 2012, with a payment for $27,000 that was received on December 5, 2012.  *Id*.  Thus, while the entire amount due for June 2012 was delinquent, only $22,413.62 of the ERISA plan contributions for that month remained unpaid as of the time the complaint in this action was filed, on November 2, 2012.

As discussed above, the undersigned finds the reasoning in *Huddleston* to be persuasive as to the application of *Idaho Plumbers* to contributions that were delinquent but paid before the complaint was filed.  Therefore, Plaintiffs are entitled to liquidated damages under ERISA only as to the amount that was unpaid when the complaint was filed, giving rise to **liquidated damages of $4,482.72**.  As to the remaining $4,918.13 that was delinquent but paid at the time the complaint was filed, Plaintiffs are entitled to liquidated damages on that amount only if they are available under federal common law as a matter of contract.  As Plaintiffs have made no showing, however, that the 20% liquidated damages provision contained in the Trust Agreements meets the requirements of federal common law, the Court finds that they may not recover liquidated damages on this portion of the June 2012 contributions.

With respect to the interest calculation for June 2012, interest is available under ERISA on the $22,413.62 that was unpaid at the time the complaint was filed.  That portion of the June contributions became delinquent on July 31, 2012 and was paid on December 5, 2012, a period of

127 days.  At 10% simple interest per annum, the daily rate is $6.14/per day, giving rise to interest of $779.87 for the portion of the June contributions that were paid after this action was filed.  As to the portion of the June contributions that was late but paid *before* the complaint was filed, the Court finds that the 10% per annum rate charged by the Trust Funds is reasonable and therefore, is available as a matter of contract.  *See Board of Trustees v. Shade Construction and Eng'g*, 2007 WL 3071003 (N.D. Cal. Oct. 19, 2007).   Therefore, as to the $4,918.13 that was paid on August 9, 2012 and available for the June 2012 contributions, Plaintiffs are entitled to $12.15 in interest (that is, 9 days at a rate of $1.35/day).  The Court therefore awards **$792.02 in interest on the June 2012 contributions**.

### ii.   July 2012

Westech owed $27,468.00 in fringe benefit contributions for the month of July 2012. April 18, 2014 Stephenson Decl., ¶ 44.  Of that amount, $26,743.50 was owed to employee benefit plans covered by ERISA.  *Id.*   On August 31, 2012, these contributions became delinquent.  *See id.* ¶ 45.   The entire amount due remained unpaid until December 12, 2012, when Westech sent Plaintiffs a payment for $50,000.  *Id.*, Ex. BB.  Because the entire contribution was delinquent and unpaid at the time the complaint was filed, Plaintiffs are entitled to 20% liquidated damages under on the full amount due to the ERISA plans, that is, **$5,348.70 in liquidated damages**.  Similarly, Plaintiffs are entitled to interest on the full amount of the delinquent July 2012 contributions under ERISA.  The July 2012 contributions became delinquent on August 31, 2012 and remained unpaid until December 12, 2012, a period of 103 days.  At 10% simple interest per annum, the daily rate is $7.33/per day, giving rise to **interest of $754.99**.

### iii.   August 2012

Westech owed $12,950.06  in fringe benefit contributions for the month of August 2012. April 18, 2014 Stephenson Decl., ¶ 47.  Of that amount, $12,588.00 was owed to employee benefit plans covered by ERISA.  *Id.*   On September 30, 2012, these contributions became delinquent. The entire amount due remained unpaid until December 12, 2012, when Westech sent Plaintiffs a check for $50,000.  *Id.*, Ex. BB.  Because the entire contribution was delinquent and unpaid at the time the complaint was filed, Plaintiffs are entitled to 20% liquidated damages under 29 U.S.C. §

1132(g) on the full amount due to the ERISA plans, that is, **$2,517.60 in liquidated damages**. Similarly, Plaintiffs are entitled to interest on the full amount of the delinquent August 2012 contributions under ERISA.  The August 2012 contributions became delinquent on September 30, 2012 and remained unpaid until December 12, 2012, a period of 73 days.  At 10% simple interest per annum, the daily rate is $3.45/per day, giving rise to **interest of $251.85.**

iv.   September 2012

Westech owed $9,816.18 in fringe benefit contributions for the month of September 2012. April 18, 2014 Stephenson Decl., ¶ 49.  Of that amount, $9,535.50 was owed to employee benefit plans covered by ERISA.  *Id.*   On October 31, 2012, these contributions became delinquent.  The entire amount due remained unpaid until December 12, 2012, when Westech submitted a payment for $50,000.  *Id.*, Ex. BB.  Because the entire contribution was delinquent and unpaid at the time the complaint was filed, Plaintiffs are entitled to 20% liquidated damages under 29 U.S.C. § 1132(g) on the full amount due to the ERISA plans, that is, **$1,907.10 in liquidated damages**. Similarly, Plaintiffs are entitled to interest on the full amount of the delinquent September 2012 contributions under ERISA.  The September 2012 contributions became delinquent on October 31, 2012 and remained unpaid until December 12, 2012, a period of 42 days.  At 10% simple interest per annum, the daily rate is $2.61/day, giving rise to **interest of $109.62.**

v.   October 2012

Westech owed $12,492.52 in fringe benefit contributions for the month of October 2012. April 18, 2014 Stephenson Decl., ¶ 51.  Of that amount, $12,130.00 was owed to employee benefit plans covered by ERISA.  *Id.*   On November 30, 2012, after the complaint was filed, these contributions became delinquent.   A portion of the October 2012 contributions ($3,604.89) was paid from the December 12, 2012 payment and the remainder of the October 2012 contributions ($8,525.11) was paid on December 21, 2012.  *Id.*;  *see also* April 18, 2014 Stephenson Decl., Ex. BB.  As discussed above, under *Wedge Roofing*, Plaintiffs are entitled under ERISA to liquidated damages and interest on contributions that come due after the complaint is filed and remain unpaid or are paid late.  Therefore, Plaintiffs are entitled to 20% liquidated damages on the full amount due to the ERISA plans for October 2012, that is, **$2,426 in liquidated damages**. Similarly,

United States District Court<br>Northern District of California

16

Plaintiffs are entitled to interest on the full amount of the delinquent October 2012 contributions under ERISA.  The October 2012 contributions became delinquent on November 30, 2012.  As a partial payment of $3,604.89 was made on December 12, 2012, that is, 12 days after the contributions became delinquent, Plaintiffs are entitled to interest on the entire amount of the October 2012 contributions for those 12 days, that is, $39.84 in interest, calculated at the daily rate of $3.32/day.  For the period of December 12, 2012 to December 21, 2012, a period of 9 days, Plaintiffs are entitled to interest on the $8,525.11 that remained outstanding on the October 2012 contributions.  The daily rate for that amount is $2.34/day, giving rise to $21.06 in interest.  Thus, **total interest due for the October 2012 contributions is $60.90**.

vi.   November 2012

Westech owed $19,813.08 in fringe benefit contributions for the month of November 2012.  April 18, 2014 Stephenson Decl., ¶ 53.  Of that amount, $19,254.25 was owed to employee benefit plans covered by ERISA.  *Id*.   These contributions were due on December 31, 2013.   After the October 2012 contributions were processed, a balance of $5,488.37 left from the December 21, 2012 payment remained available for the November 2012 contributions.  April 18, 2014 Stephenson Decl., Ex. BB.  Consequently, only $13,765.88 of the November 2012 contributions was delinquent.  Plaintiffs are entitled under ERISA to 20% liquidated damages on that amount, that is, $**2,753.18 in liquidated damages**. (As discussed above, under *Wedge Roofing*, Plaintiffs are entitled under ERISA to liquidated damages and interest on contributions that come due after the complaint is filed and remain unpaid or are paid late.)  The delinquent amount was paid on February 13, 2013, that is, 44 days after the contributions became delinquent.  *Id*.  At 10% simple interest per annum, the daily rate on the amount that was delinquent for November 2012  is $3.77/per day, giving rise to **interest of $165.88.**

vii.   December 2012

Westech owed $ 10,099.86 in fringe benefit contributions for the month of December 2012.  April 18, 2014 Stephenson Decl., ¶ 55.  Of that amount, $9,824.25 was owed to employee benefit plans covered by ERISA.  *Id*.   These contributions were due on January 31, 2013.  The entire amount was delinquent as it was paid by Westech in installments that were received by

United States District Court
Northern District of California

Plaintiffs on February 13, 2013, February 28, 2013 and March 19, 2013.  April 18, 2014 Stephenson Decl., Ex. BB.  Therefore, Plaintiffs are entitled under ERISA to 20% liquidated damages on the full amount of the December contributions owed to ERISA plans, that is, **$1,964.85 in liquidated damages**. (As discussed above, under *Wedge Roofing*, Plaintiffs are entitled under ERISA to liquidated damages and interest on contributions that come due after the complaint is filed and remain unpaid or are paid late.)

Plaintiffs are entitled to interest on the entire amount of the December 2012 contributions due to the ERISA plans for the thirteen days between January 31, 2013 and February 13, 2013.  At 10% simple interest per annum, the daily rate on that amount is $2.69/per day, giving rise to interest of $34.97.  Following the February 13, 2013 payments, there was a balance on Westech's account of $415.29 available for the December 2012 contributions, leaving $9,408.96 due.  April 18, 2013 Stephenson Decl., Ex. BB.  As to this amount, Plaintiffs are entitled to interest for the fifteen days between the February 13, 2013 payment and the next payment, made on February 28, 2013.  At a daily rate of  $2.58/day, interest for that period is $38.70.  On February 28, 2013, Westech made a payment of $1,000, leaving $8,408.96 due for December 2012.  As to this amount, Plaintiffs are entitled to interest for the nineteen days between February 28, 2013 and March 19, 2013, when the next payment was made.  At a daily rate of $2.30, the interest for this period is $43.70.  The March 19, 2013 payment was for $15,000 which covered the remainder of the outstanding contributions for December 2012, leaving a balance of $6,315.43.  The **total interest due on the December 2012 contributions is $117.37**.

> viii.   January 2013

Westech owed $ 15,674.38 in fringe benefit contributions for the month of January 2013. April 18, 2014 Stephenson Decl., ¶ 57.  Of that amount, $15,245.25 was owed to employee benefit plans covered by ERISA.  *Id.*   These contributions were due on February 28, 2013.  The entire amount was delinquent as it was paid by Westech in installments that were received by Plaintiffs on March 19, 2013 (the $15,000 payment discussed above), March 28, 2013, March 29, 2013 and April 2, 2013.  April 18, 2014 Stephenson Decl., Ex. BB. Therefore, Plaintiffs are entitled under ERISA to 20% liquidated damages on the full amount of the January 2013 contributions owed to

ERISA plans, that is, **$3,049.05 in liquidated damages**.

Plaintiffs are entitled to interest on the entire amount of the January 2013 contributions due to the ERISA plans ($15,245.25) for the 19 days between February 28, 2013 and March 19, 2013. At 10% simple interest per annum, the daily rate on that amount is $4.18/per day, giving rise to interest of $79.42. Following the March 19, 2013 payment, there was a balance on Westech's account of $6,315.43 available for the January 2013 contributions, leaving $8,929.82 due to the ERISA plans. April 18, 2013 Stephenson Decl., Ex. BB. As to this amount, Plaintiffs are entitled to interest for the nine days between the March 19, 2013 payment and the next payment, made on March 28, 2013. At a daily rate of $2.45/day, interest for that period is $22.05. The March 28, 2013 payment was for $4,500, leaving $4,429.82 of the January 2013 ERISA contributions unpaid. Plaintiffs are entitled to interest for one day on this amount at a rate of $1.21/day. The remainder of the outstanding January 2013 contributions was paid the next day, on March 29, 2013, when Westech made a payment for $7,815. Thus, the **total interest due on the January 2013 ERISA contributions is $102.68**.

ix.   February 2013

Westech owed $14,406.52 in fringe benefit contributions for the month of February 2013. April 18, 2014 Stephenson Decl., ¶ 59. Of that amount, $14,016.75 was owed to employee benefit plans covered by ERISA. *Id.* These contributions were due on March 31, 2013. The spreadsheets reflect that the February 2013 contributions were not processed until April 2, 2013, *id.*, Ex. BB, and Plaintiffs assert that they are entitled to 20% of the entire amount of ERISA contributions due for February 2013. *Id.*, ¶ 59. However, the amounts and dates of the payments listed in spreadsheets show that the March 29, 2013 payment left a balance of $2,956.05 after the January contributions were processed. This amount was available to be applied toward the February 2013 contributions *before* they became delinquent. Therefore, of the $14,016.75 that was owed to employee benefit plans covered by ERISA, Westech was delinquent as to only $11,060.70 (that is, $14,016.75 minus $2,956.05). **Plaintiffs are entitled to 20% of this amount in liquidated damages, that is, $2,212.14.**

Plaintiffs are entitled to interest on the delinquent amount of the February 2013

19

contributions due to the ERISA plans ($11,060.70) for the 2 days between March 31, 2013 and April 2, 2013, when the next payment, in the amount of $1,000 was received.  At 10% simple interest per annum, the daily rate on that amount is $3.03/per day, giving rise to interest of $6.06. Following the April 2, 2013 payment, there was a balance due for the February 2013 ERISA contributions of $10,060.70.  As to this amount, Plaintiffs are entitled to interest for the 30 days between the April 2, 2013 payment and the next payment, made on May 2, 2013.  At a daily rate of $2.76/day, interest for that period is $82.80.  The May 2, 2013 payment was for $21,548.70 and paid in full the February 2013 contributions. Thus, the **total interest due on the delinquent ERISA contributions for February 2013 is $88.86**.

x.   March 2013

Westech owed $22,629.04 in fringe benefit contributions for the month of March 2013. April 18, 2014 Stephenson Decl., ¶61.  Of that amount, $22,011.00 was owed to employee benefit plans covered by ERISA.  *Id*.  These contributions were due on April 30, 2013.   The payment from May 2, 2013 left a balance of $11,098.23 available for the March 2013 contributions.  The remainder of the March 2013 contributions was covered by a check received on May 20, 2013 for $11,530.81.  April 18, 2014 Stephenson Decl., Ex. BB.   As the entire amount of March 2013 ERISA contributions due was delinquent, Plaintiffs are entitled to **$4,402.20 in liquidated damages for the March 2013 ERISA contributions**.

Plaintiffs are entitled to interest on the full amount of the March 2013 contributions due to the ERISA plans ($22,011.00) for the 2 days between April 30, 2013 and May 2, 2013, when the next payment, in the amount of $21,548.70 was received.  At 10% simple interest per annum, the daily rate on that amount is $6.03/per day, giving rise to interest of $12.06.  Following the May 2, 2013 payment (part of which was used for the February 2013 contributions), a balance of $11,098.23 remained available for the March 2013 contributions.  Thus, the amount of the March 2013 ERISA contributions due as of May 2, 2013 was $10,912.77.  As to that amount, Plaintiffs are entitled to interest for the 18 days between the May 2, 2013 payment and the next payment, made on May 20, 2013, which covered the remainder of the March 2013 ERISA contributions.  At a daily rate of  $2.99/day, interest for that period is $53.82.  Thus, the **total interest due on the**

United States District Court
Northern District of California

**delinquent ERISA contributions for March 2013 is $65.88.**

xi.   April 2013

Westech owed $18,519.60 in fringe benefit contributions for the month of April 2013.

April 18, 2014 Stephenson Decl., ¶ 63.  Of that amount, $18,026.25 was owed to employee benefit

plans covered by ERISA.  *Id*.  These contributions were due on May 31, 2013.  Plaintiffs

received a payment of $5,181.30 on May 20, 2013 and that full amount was available for the April

2013 contributions.  April 18, 2014 Stephenson Decl., Ex. BB.  Thus, $12,844.95 of the April

2013 ERISA contributions were delinquent, giving rise to **liquidated damages of $2,568.99.**

Plaintiffs are entitled to interest on the delinquent amount of the April 2013 contributions

due to the ERISA plans ($12,844.95) for the 6 days between May 31, 2013 and June 6, 2013,

when the next payment, in the amount of $779.93 was received.  At 10% simple interest per

annum, the daily rate on that amount is $3.52/per day, giving rise to interest of $21.12.  Sometime

after the June 6, 2013 payment, Westech was charged $3,750.04 to correct for the

misclassification of one of its employees for the months of October 2012 through March 2013.

April 18, 2014 Stephenson Decl., ¶ 64.  Westech does not challenge the charge.  As Plaintiffs

have not provided the date upon which this amount was charged against Westech, the Court

assumes that this charge accrued on July 11, 2013, when Westech made its next payment, in the

amount of $15,000.   Therefore, between June 6, 2013 and July 11, 2013, Westech owed

$12,065.02 (that is, $12,844.95 minus $779.93) in April 2013 ERISA contributions.  For this

period of 35 days, the daily interest rate was $3.31/day, giving rise to interest in the amount of

$115.85.  On July 11, 2013, Westech made a payment of $15,000.  The Court deducts the

$3,750.04 charge from this amount, leaving a balance of $11,249.96 for the April 2013 ERISA

contributions.  Thus, from July 11, 2013 to July 19, 2013, when the next payment was made,

Westech owed $81.06 on the April 2013 ERISA contributions.  For those 8 days, the interest rate

was $.22/day, giving rise to interest of $1.76.  On July 19, 2013 a check for $20,000 was received

from Westech, paying off the April 2013 ERISA contributions.  Thus, the **total interest due on

the ERISA contributions for April 2013 was $138.73**.

xii.   May 2013

United States District Court
Northern District of California

Westech owed $21,550.08 in fringe benefit contributions for the month of May 2013. April 18, 2014 Stephenson Decl., ¶ 66.  Of that amount, $20,819.25 was owed to employee benefit plans covered by ERISA.  *Id.*  These contributions were due on June 30, 2013.   No payments on the May 2013 ERISA contributions were made until July 19, 2013 so the entire amount due on the May 2013 ERISA contributions was delinquent.  Therefore, Plaintiffs are entitled to **$4,163.85 in liquidated damages for the May 2013 ERISA contributions**.

Plaintiffs are entitled to interest on the full amount of the May 2013 contributions due to the ERISA plans ($20,819.25) for the 19 days between June 30, 2013 and July 19, 2013, when the next payment, in the amount of $20,000 was received.  At 10% simple interest per annum, the daily rate on that amount is $5.70/ day, giving rise to interest of $108.30.  Following the July 19, 2013 payment (part of which was used for the April 2013 contributions), a balance of $18,691.59 remained available for the May 2013 contributions.   Thus, the amount of the May 2013 ERISA contributions due as of July 19, 2013 was $2,127.66.  As to that amount, Plaintiffs are entitled to interest for the 17 days between the July 19, 2013 payment and the next payment, made on August 5, 2013, which covered the remainder of the May 2013 ERISA contributions.  At a daily rate of $.58/day, interest for that period is $9.86.  Thus, the **total interest due on the delinquent ERISA contributions for  May 2013 is $118.16.**

xiii.   June 2013

Westech owed $27,728.16 in fringe benefit contributions for the month of June 2013. April 18, 2014 Stephenson Decl., ¶ 68.  Of that amount, $26,875.50 was owed to employee benefit plans covered by ERISA.  *Id.*  These contributions were due on July 31, 2013.   No payments on the June 2013 ERISA contributions were made until August 5, 2013 so the entire amount due on the June 2013 ERISA contributions was delinquent.  Therefore, Plaintiffs are entitled to **$5,375.10 in liquidated damages for the June 2013 ERISA contributions**.

The June 2013 ERISA contributions were covered by the payment on August 5, 2013 (which left a balance of $3,907.16 after the May 2013 contributions were processed), August 22, 2013 ($6,387.70), September 9, 2013 ($2,810.88), September 12, 2013 ($7,839.62), September 19,

United States District Court
Northern District of California

2013 ($3,521.70), October 22, 2013 ($2,785.26).[14] Thus, Plaintiffs are entitled to the following amounts in interest:  1) interest on $26,875.50 for the five days between July 31 to August 5, 2013 at a rate of $7.36/day, that is, $36.80; 2) interest on $22,968.34 for the 17 days between August 5, 2013 and August 22, 2013 at a rate of $6.29/day, that is, $106.93; 3) interest on $16,580.64 for the 18 days between August 22, 2013 and September 9, 2013 at a rate of $4.54/day, that is, $81.72; 4) interest on $13,769.76 for the three days between September 9, 2013 and September 12, 2013 at a rate of $3.77/day, that is, $11.31; 5) interest on $5,930.14 for the 7 days between September 12, 2013 and September 19, 2013 at a rate of $1.62/day, that is, $11.34; 6) interest on $2,408.44 for the 33 days between September 19, 2013 and October 22, 2013 at a rate of $.66/day, that is, $21.78.  Thus, the **total interest due for the June 2013 ERISA contributions is $269.88**.

### xiv.   July 2013

Westech owed $24,093.02 in fringe benefit contributions for the month of July 2013. April 18, 2014 Stephenson Decl., ¶ 70.  Of that amount, $23,442.37 was owed to employee benefit plans covered by ERISA.  *Id*.   These contributions were due on August 31, 2013.   No payments on the July 2013 ERISA contributions were made until November 12, 2013 so the entire amount due on the July 2013 ERISA contributions was delinquent.  Therefore, Plaintiffs are entitled to **$4,688.47 in liquidated damages for the July 2013 ERISA contributions**.

On November 12, 2013, Plaintiffs received two payments from Westech, in the amounts of $5,413.30 and $9,950.99.  After the June 2013 contributions were processed, $14,888.45 remained for the July 2013 contributions.  Thus, Plaintiffs are entitled to interest on the full amount of the unpaid ERISA contributions ($23,442.37) for the 73 days between August 31, 2013 and November 12, 2013 at a rate of $6.42/day, that is, $468.66.  Following the November 12, 2013 payments, the amount owed for the July 2013 ERISA contributions was $8,553.92.  Plaintiffs are entitled to interest on that amount for the seven days between November 12, 2013 and November

---

[14] The spreadsheet reflects that Plaintiffs did not process the June 2013 contributions until after they received two payments on November 12, 2013, when the amounts received from Westech were enough to cover the contributions due to both the ERISA plans and the non-ERISA plan.  As discussed above, the Court assumes that all balances and payments would have gone to the ERISA plans first.  Thus, by October 22, 2013 the payments made by Westech were sufficient to cover the June 2013 contributions owed to the ERISA plans.

United States District Court
Northern District of California

United States District Court
Northern District of California

19, 2013, when the next two payments were made, at a rate of $2.34, that is, $16.38.  On November 19, 2013, Westech made payments for $2,970.00 and $544.32, a total of $3,514.32.  Thus, as of November 19, 2013, Westech owed $5,039.60 on its July 2013 ERISA contributions.  Plaintiffs are entitled to interest on that amount for the 34 days between November 19, 2013 and December 23, 2013 at a rate of $1.38/day, that is, $46.92.  On December 23,2013 Westech made a payment in the amount of $2,893.20 and thus owed $2,146.40 on the July 2013 ERISA contributions.  Plaintiffs are entitled to interest on that amount for the one day between December 23, 2013 and December 24, 2013, when Westech made its next payment, at a rate of $.59/day, that is, $.59.  On December 24, 2013, Westech paid off all of its outstanding contributions for July 2013.  Thus, the **total interest for the July 2013 ERISA contributions to which Plaintiffs are entitled is $532.55.**

xv.   August 2013

Westech owed $31,958.30 in fringe benefit contributions for the month of August 2013.  April 18, 2014 Stephenson Decl., ¶ 72.  Of that amount, $31,076.50 was owed to employee benefit plans covered by ERISA.  *Id*.   These contributions were due on September 30, 2013.   No payments on the August 2013 ERISA contributions were made until December 24, 2013 so the entire amount due on the August 2013 ERISA contributions was delinquent.  Therefore, Plaintiffs are entitled to **$6,215.30 in liquidated damages for the August 2013 ERISA contributions**.

On December 24, 2013, two payments were made by Westech and the July 2013 contributions were processed, leaving $29,578.37 available for the August 2013 ERISA contributions.  Thus, for the 85 days between September 30, 2013 and December 24, 2013, Plaintiffs are entitled to interest on $31,076.50 at a rate of $8.51/day, that is, $723.35.  As of December 24, 2013, Westech owed $1,498.13.  Plaintiffs are entitled to interest on that amount for the thirty days between December 24, 2013 and January 23, 2014, when the next payment was made.  At a rate of $.41/day, Plaintiffs are entitled to $12.30 for this period.  With the January 23, 2014 payment Westech paid off all of its outstanding contributions for August 2013.  Therefore, Plaintiffs are entitled to **$735.65 in interest for the August 2013 contributions**.

xvi.   September 2013

1    Westech owed $24,267.26 in fringe benefit contributions for the month of September

2    2013.  April 18, 2014 Stephenson Decl., ¶ 74.  Of that amount, $23,598.30 was owed to employee

3    benefit plans covered by ERISA.  *Id*.   These contributions were due on October 31, 2013.   No

4    payments on the September 2013 ERISA contributions were made until January 23, 2014 so the

5    entire amount due on the September 2013 ERISA contributions was delinquent.  Therefore,

6    Plaintiffs are entitled to **$4,719.66 in liquidated damages for the September 2013 ERISA**

7    **contributions.**

8    For the 84 days between October 31, 2013 and January 23, 2014, Plaintiffs are entitled to

9    interest on the full amount of ERISA contributions due ($23,598.30).  As a rate of $6.47/day, the

10   interest for this period is $537.01. On January 23, 2014, Westech made a payment in the amount

11   of $7,654.50.  After the August 2013 contributions were processed, a balance of $5,274.57

12   remained for the September 2013 contributions.  Thus, as of January 23, 2014, Westech owed

13   $18,323.73 in September 2013 ERISA contributions.  For the one-day period  between January 23,

14   2014 and January 24, 2014, when Westech made an additional payment, Plaintiffs are entitled to

15   interest on that amount at a daily rate of $5.02.  On January 24, 2014, Westech made a payment of

16   $6,228, leaving $12,095.73 in unpaid ERISA contributions for September 2013.  Plaintiffs are

17   entitled to interest on that amount at a rate of $3.31/day for the three-day period between January

18   24, 2014 and January 27, 2014, when the September 2013 contributions were paid off, that is,

19   $9.93.  Thus, Plaintiffs are entitled to **$551.96 for the September 2013 contributions**.

20                              xvii.   October 2013

21   Westech owed $20,593.00 in fringe benefit contributions for the month of October 2013.

22   April 18, 2014 Stephenson Decl., ¶ 76.  Of that amount, $20,024.10 was owed to employee benefit

23   plans covered by ERISA.  *Id*.   These contributions were due on November 30, 2013.   No

24   payments on the October 2013 ERISA contributions were made until January 27, 2014 so the

25   entire amount due on the October 2013 ERISA contributions was delinquent.  Therefore, Plaintiffs

26   are entitled to **$4,004.82 in liquidated damages for the October 2013 ERISA contributions.**

27   For the 58 days between November 30, 2013 and January 27, 2014, Plaintiffs are entitled

28   to interest on the full amount owed to the ERISA plans ($20,024.10) at a rate of $5.49/day, that is,

United States District Court
Northern District of California

$318.42.  The October 2013 ERISA contributions were paid in full with the January 27, 2014 payment.  Therefore, **the total interest due for the October 2013 ERISA contributions is $318.42**.

xviii.   November 2013

Westech owed $30,478.55 in fringe benefit contributions for the month of November 2013.  April 18, 2014 Stephenson Decl., ¶ 78.  Of that amount, $29,638.20 was owed to employee benefit plans covered by ERISA.  *Id.*   These contributions were due on December 31, 2013.   No payments on the November 2013 ERISA contributions were made until January 27, 2014 so the entire amount due on the November 2013 ERISA contributions was delinquent.  Therefore, Plaintiffs are entitled to **$5,927.64 in liquidated damages for the November 2013 ERISA contributions.**

For the 27 days between December 31, 2013 and January 27, 2014, Plaintiffs are entitled to interest on the full amount owed to the ERISA plans ($29,638.20) at a rate of $8.12/day, that is, $219.24.  On January 27, 2014, Westech made a payment of $58,100.81.  After the contributions for September 2013 and October 2013 were processed, $24,743.12 remained for the November 2013 ERISA contributions. Thus, as of January 27, 2014, Westech owed $4,895.08 on the November 2013 ERISA contributions.  Plaintiffs are entitled to interest on that amount for the 35 days between January 27, 2014 and March 3, 2014, when the next payment was made.  The daily rate for this period is $1.34, giving rise to interest in the amount of $46.90.  The March 3, 2014 payment paid in full the November 2013 ERISA contributions.  The **total interest due for the November 2013 contributions is $266.14.**

xix.   December 2013

Westech owed $25,244.34 in fringe benefit contributions for the month of December 2013.  April 18, 2014 Stephenson Decl., ¶ 80.  Of that amount, $24,529.50 was owed to employee benefit plans covered by ERISA.  *Id.*   These contributions were due on January 31, 2014.   No payments on the December 2013 ERISA contributions were made until March 3, 2014 so the entire amount due on the December 2013 ERISA contributions was delinquent.  Therefore, Plaintiffs are entitled to **$4,905.90 in liquidated damages for the December 2013 ERISA**

United States District Court
Northern District of California

**contributions.**

For the 31 days between January 31, 2014 and March 3, 2014, Plaintiffs are entitled to interest on the full amount owed to the ERISA plans for December 2013 ($24,529.50) at a rate of $6.72/day, that is, $208.32.  On March 3, 2014, Westech made a payment of $28,296.80.  After the November 2013 contributions were processed, a balance of $22,561.37 remained from that payment for the December 2013 ERISA contributions.  Therefore, as of March 3, 2014, Westech owed $1,968.13 in December 2013 ERISA contributions.  Plaintiffs are entitled to interest on this amount for the 29 days between March 3, 2014 and April 1, 2014, when Westech made another payment.  The rate for this period is $.54, giving rise to interest in the amount of $15.66.  On April 1, 2014, Westech made a payment in the amount of  $3,872.50, which satisfied the remaining amount owed by Westech for December 2013 and left $1,209.53 to be applied towards its the January 2014 contributions.  The **total interest to which Plaintiffs are entitled for December 2013 is $223.98**.

xx.   January 2014

Westech owed $30,843.54 in fringe benefit contributions for the month of January 2014. April 18, 2014 Stephenson Decl., ¶ 82;  *see also* May 5, 2014 Stephenson Decl., ¶ 50.  Of that amount, $30,002.70 was owed to employee benefit plans covered by ERISA.  *Id.*   These contributions were due on February 28, 2014.   No payments on the January 2014 ERISA contributions were made until April 1, 2014, so the entire amount due on the January 2014 ERISA contributions was delinquent.  Therefore, Plaintiffs are entitled to **$6,000.54 in liquidated damages for the January 2014 ERISA contributions.**

For the 32 days between February 28, 2014 and April 1, 2014, Plaintiffs are entitled to interest on the full amount owed to the ERISA plans for January 2014 ($30,002.70) at a rate of $8.22/day, that is, $263.04.   On April 1, 2014,  Westech made a payment in the amount of $3,872.50, which satisfied the remaining amount owed by Westech for December 2013 and left $1,209.53 to be applied towards the January 2014 contributions.  May 5, 2014 Stephenson Decl., Ex. NN.  Consequently, as of April 1, 2014, Westech owed $28,793.17 in ERISA contributions for January 2014.  Plaintiffs are entitled to interest on that amount for the 28 days between April 1,

United States District Court
Northern District of California

2014 and April 29, 2014, when Westech made its next payment, at a rate of $7.89, giving rise to interest in the amount of $220.92 for this period.   The payment on April 29, 2014 was for $2,651.29.  Thus, as of that date, $26,141.88 was owed to the ERISA plans for January 2014. Plaintiffs are entitled to interest on this amount, at a rate of $7.16, for the three days until the next payment was made, on May 1, 2014, that is $21.48.  The May 1, 2014 payment was in the amount of $1,050.75 and therefore, as of May 1, the amount owed on ERISA contributions for January 2014 was $25,091.13.  Plaintiffs were entitled to interest for one day on that amount, at a rate of $6.87.  The next day, another payment was made, in the amount of $1,175.50, **bringing the amount due for the January 2014 ERISA contributions down to $23,915.63**.  That is the amount that remained unpaid as of May 5, 2014.  Plaintiffs are entitled to interest on this amount at a rate of $6.55/day for the period May 2, 2014 to the date of this order, that is, $111.35.  Thus, Plaintiffs are entitled to **interest on the January 2014 contributions in the amount of $623.66**.

### xxi.   February 2014

Westech owed $26,992.38 in fringe benefit contributions for the month of February 2014. April 18, 2014 Stephenson Decl., ¶ 84.  Of that amount, $26,255.30 was owed to employee benefit plans covered by ERISA.  *Id.*; *see also* May 5, 2014 Stephenson Decl., ¶¶ 7, 52.  These contributions were due on March 31, 2014.   No payments on the February 2014 ERISA contributions had been made as of May 5, 2014, the date Plaintiffs filed their final brief.  Because the entire amount due on the February 2014 ERISA contributions was delinquent Plaintiffs are entitled to **$5,251.06 in liquidated damages for the February 2014 ERISA contributions**.  At the rate of 10% per annum, the daily rate on the unpaid February 2014 ERISA contributions is $7.19/day.  Thus, **interest on the unpaid ERISA contributions for February 2014 for the period March 31, 2014 to the date of this order is $352.31**.

xxii. Summary of Unpaid Contributions, Liquidated Damages and Interest
(June 2012 - February 2014)

| Month Accrued | ERISA Contributions Remaining Unpaid as of May 5, 2014 | Liquidated Damages | Interest |
|---|---|---|---|
| 6/12 | $0 | $4,482.72 | $792.02 |
| 7/12 | $0 | $5,348.70 | $754.99 |
| 8/12 | $0 | $2,517.60 | $251.85 |
| 9/12 | $0 | $1,907.10 | $109.62 |
| 10/12 | $0 | $2,426 | $60.90 |
| 11/12 | $0 | $2,753.18 | $165.88 |
| 12/12 | $0 | $1,964.85 | $117.37 |
| 1/13 | $0 | $3,049.05 | $102.68 |
| 2/13 | $0 | $2,212.14 | $88.86 |
| 3/13 | $0 | $4,402.20 | $65.88 |
| 4/13 | $0 | $2,568.99 | $138.73 |
| 5/13 | $0 | $4,163.85 | $118.16 |
| 6/13 | $0 | $5,375.10 | $269.88 |
| 7/13 | $0 | $4,688.47 | $532.55 |
| 8/13 | $0 | $6,215.30 | $735.65 |
| 9/13 | $0 | $4,719.66 | $551.96 |
| 10/13 | $0 | $4,004.82 | $318.42 |
| 11/13 | $0 | $5,927.64 | $266.14 |
| 12/13 | $0 | $4,905.90 | $223.98 |
| 1/14 | $23,915.63 | $6,000.54 | $623.66 |
| 2/14 | $26,255.30 | $5,251.06 | $352.31 |
| **TOTAL**: | $50,170.93 | $84,884.87 | $6,641.49 |

United States District Court
Northern District of California

1

### 4.  Fees

2          Plaintiffs are entitled to attorneys' fees under ERISA and the Trust Agreements.  29 U.S.C.

3   § 1132(g)(2)(D).  For time spent on this action from April 11, 2013, when Eileen Bissen

4   substituted in as counsel for Michael Carroll, [15]up to the date of the Motion hearing, Plaintiffs seek

5   fees for 11.4 hours of attorney time by attorney Eileen Bissen at a rate of $225/hour.  *See*

6   Amended Declaration of Eileen M. Bissen in Support of Motion for Default Judgment Against

7   Defendant Westech Roofing *(*"January 23, 2014 Bissen Decl."), ¶ 2, 7; March 5, 2014 Bissen

8   Decl., ¶¶ 4-5.   Plaintiffs request fees for an additional 14 hours of Ms. Bissen's time spent

9   preparing the supplemental materials requested by the Court at the Motion hearing.  Supplemental

10   Declaration of Eileen M. Bissen in Support of Motion for Default Judgment Against Westech

11   Roofing ("April 18, 2014 Bissen Decl.").  Westech concedes that the hourly rate is fair but objects

12   to the amount of time requested by Plaintiffs, arguing that it should not be required to "pay for

13   [their] repeated efforts . . .  to calculate the damages they are demanding."  April 28, 2014

14   Westech Response at 6.

15          Under 29 U.S.C. § 1132(g)(2), an employee benefit plan that prevails in an enforcement

16   action for unpaid contributions is entitled to reasonable attorneys' fees.  Although the Court

17   requested additional materials in support of Plaintiffs' Motion and ultimately did not accept

18   Plaintiffs' calculations, the Court does not find that the time spent by Plaintiffs' counsel on this

19   action was unreasonable.  Westech's long history of non-compliance (which continued throughout

20   this action) accompanied by sporadic and incomplete payments, meant that Plaintiffs and the

21   Court were faced with a constantly moving target.  Further, Westech's own initial failure to file a

22   meaningful opposition, followed by vague assertions in its subsequent brief that Plaintiffs had not

23   accounted for all of its payments (which later turned out to be incorrect) contributed to the fees

24   incurred by Plaintiffs.   Therefore, the Court awards fees for the full amount of time requested by

25   Plaintiffs (25.4 hours) at Ms. Bissen's rate of $225/hour, that is, $5,715.00.

26

27

28

[15] Plaintiffs are not requesting fees for the time spent on this action by Mr. Carroll.

United States District Court
Northern District of California

### 5. Costs

Under Civil Local Rule 54-3, an award of costs may include the Clerk's filing fee and fees for service of process "to the extent reasonably required and actually incurred." In addition, the Trust Agreements provide for the recovery of all expenses incurred in collection. Plaintiffs have documented $407.84 in costs. *See* January 23, 2014 Bissen Decl., ¶ 10; April 18, 2014 Bissen Decl., ¶ 4. That amount is awarded in full.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED. The Court awards the following amounts in damages: 1) $50,170.93 in unpaid contributions for the months of January and February 2014; 2) $84,884.87 in liquidated damages; 3) $6,641.49 in interest; 4) $5,715.00 in attorneys' fees; and 5) $407.84 in costs. Any payments that have been made to Plaintiffs by Westech since May 5, 2014 shall be deducted from these amounts.

In additions, the Court invites Plaintiffs to file a request for entry of a permanent injunction consistent with the injunctive relief requested in Plaintiffs' Complaint. In their Complaint, Plaintiffs requested that the Court enjoin defendant from violating the terms of the collective bargaining agreement and the Trust Agreements. The evidence before the Court appears to be sufficient to establish that such relief is warranted. Were the Court to enter such an injunction, it would also retain jurisdiction to enforce its terms. **Should Plaintiffs chose to request entry of a permanent injunction in this action, their request shall be filed no later than June 2, 2014**. Westech may file a response no later than **June 16, 2014.** If Plaintiffs do not file a request for injunctive relief by June 2, 2014, the Clerk is instructed to enter final judgment in favor of Plaintiffs.

**IT IS SO ORDERED.**

Dated: May 19, 2014

JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
Northern District of California